## JONATHAN ALSTON v. SAMUEL WHITE.

High Court of Errors and Appeals. June 10, 1818.

*Ridgely's Notebook II, 123.**

* This case is also reported in *Clayton's Notebook, 68.*

*Hall* for plaintiff in error and plaintiff below. *Clayton* for defendant in error and defendant below. . . .

CHANCELLOR RIDGELY. In deciding this cause we take into consideration every fact which appears in it, for they all are material and form together the ground on which an opinion is founded. We are sensible that inconveniences will arise out of this Act, and therefore we desire to be understood as deciding under the circumstances of the case as they are stated in the record. The variation of any one of them might change the merits of the question. The variation of some of them certainly would; and therefore we are not about to decide generally upon this Act of Assembly, but upon the case which grows out of the facts now brought before the Court.

The Indian corn, of the quantity of 280 or 300 bushels taken in execution and sold by the sheriff to the defendant, White, grew on the demised premises in the year 1813. Out of this corn Alston was entitled to 200 bushels for the rent of the year 1813. The corn was gathered and in the barn on the demised premises at the time it was seized by the sheriff in December, 1813, and when he sold it in January, 1814, to Samuel White, for $13.50. The term expired in March, 1814. The rent became due or payable in May, 1814. The corn was sold subject to the rent, according to the directions of the Act of Assembly. Corn was sold in May, 1814, in Little Creek Neck for five shillings per bushel, and at Milford in August in the same year at sixty cents per bushel.

The question now is whether Samuel White was liable to Alston for his rent of 200 bushels of Indian corn, and whether Alston can maintain this action of assumpsit or can have his remedy by distress only.

It is evident that the Act of Assembly, 4 Del.Laws 262, c. 88, was designed to secure to the landlord one year's rent, at all events. When the rent is payable in money, the second section provides for the payment of it on the sale of the goods taken in execution being on any demised messuage, land, etc., although the rent shall not have become due until after the sale of such goods.

The third section provides for securing the rent when it is reserved to be paid in grain, etc., although it shall not be due at

the time of a sale by the sheriff or other proper officer. The words of the Act are (4 Del. Laws 265, s. 3): "That whenever any messuage, lands, etc. shall be demised etc. wherein the rent reserved, is to be paid in any sort of grain etc., either in a certain quantity etc. or in a certain share etc., and the goods and chattels, lying or being in or upon any such messuage, lands etc., shall be taken by virtue of any execution or attachment, the sheriff, or other proper officer, who shall sell the said goods and chattels, by virtue of any such execution or attachment, or proceedings thereon, shall sell the said grain etc., subject to the land-lord's rent, for one year; and when the rent shall become due, the land-lord may proceed to take, seize, distrain, and sell, for such rent, the said grain etc., in the same manner, and under the same regulations, as are provided in the first section. . ."

In compliance with the directions of the Act of Assembly, the sheriff sold this corn for $13.50, "subject to the land-lord's rent, for one year." Here then was an express stipulation on the part of the purchaser that 200 bushels of this corn should be paid to the landlord; and the rent, as well as the $13.50, as was properly observed by the plaintiff's counsel, became the consideration for the corn thus purchased. The purchaser, having a sufficiency in his hands, substituted himself for the tenant as to the payment of this rent by purchasing subject to the rent, which took on himself all the terms or conditions annexed to this rent. "Subject to the land-lord's rent, for one year" must mean something more than the mere right of the landlord to distrain. Whatever were the duties or responsibility of the tenant in respect to the rent, the same devolved on the purchaser. He certainly was bound to take care of the corn, to keep it in good order if it was in that state when he purchased. If it had been standing in the field, he would have been bound to gather and secure it. If the corn was to be beaten off the cob and so delivered, the purchaser was bound to do so. Why should any of the conditions upon which the rent was to be paid to the landlord cease when it went into the hands of the purchaser? Upon a distress the purchaser would certainly have been bound to pay the expenses. He purchased with a view to this rent, and the money paid by him was not the only consideration given for these 280 or 300 bushels of corn. Unquestionably then, when he purchased this corn, he took upon himself the payment of the rent, and I think that it amounted to an express engagement on his part to pay it.

But it is said that White could not become liable to Alston independent of the Act of Assembly; and that without that Act

the sheriff could not have sold the corn subject to the landlord's rent. This is certainly true; but as the Act required the sheriff to sell the corn subject to the landlord's rent, and as the sale was made expressly on that condition, I do not perceive how the case is thereby raised. It only amounts to this, that the Act of Assembly allows a contract to be made through the sheriff, which, without that Act, could not be done. And the purchase being made on the express condition that the corn should be subject to the landlord's rent, it is an express promise on the part of the purchaser to pay the rent. I repeat that my opinion is founded on all the circumstances of the case; and particularly on this, that the purchaser got as much corn as the whole rent amounted to, with a quantity over and above the rent fully equal to the money paid, though I do not perceive that the excess of quantity above the rent is a matter of moment in this case.

It was strongly contended and relied on materially in the defense that, as the Act of Assembly has given to the landlord a remedy by distress, he is confined to that remedy and can support no action for the recovery of the rent. To this purpose the case of *Stevens v. Evans et al.,* 2 Burr. 1152, was cited, in which Mr. Justice Dennison said, "It is a rule, 'that upon a new statute which prescribes a particular remedy; no remedy can be taken, but the particular remedy prescribed by the statute.' Therefore clearly no action of debt will lie for a poor's rate." The question there was, if a warrant of distress be made upon refusal to pay a rate demanded, and before execution of it the offender dies, whether it can be executed upon goods and chattels in the hands of his representative.

That was a poor rate made under the Statute, 43 Eliz., c. 2, s. 4. The Statute not only prescribed the remedy but created the duty, and, without the semblance of a contract, made the neglect to pay an offense. Without the Statute, the party demanding had no right vested in him to have or demand the payment of the duty rated in any form, or from any person; hence it was that the judge declared that no other than the remedy prescribed by the Statute could be taken. There could be no common-law remedy, for the right and remedy grew out of the Statute; and there was no question whether an action would lie. The only question was whether the goods of a person rated, he having died, could be distrained in the hands of his representative. That case does not apply, and the rule laid down by the judge must be confined to the case before him. And it is likely that he had in view the distinction he made in the case of *Rex v. Wright,* 1 Burr. 542, especially as both cases related

to offenses. In the latter case,[1] he said that where an offense is not so at common law, but made an offense by Act of Parliament, yet an indictment will lie where there is a substantive prohibitory clause in such Act of Parliament, though there be afterwards a particular provision and a particular remedy given. But it is otherwise where the Act is not prohibitory but only inflicts the forfeiture and specifies the remedy. And afterwards, in 2 Burr. 799, *Rex v. Robinson* was cited by the plaintiff's counsel, and the Court, having taken time to consider, delivered their opinion that, where a statute creates a new offense and appoints a particular method of proceeding, that specific method must be pursued and no other, but where it was an offense antecedently punishable before the statute, and the statute prescribes a particular summary method, then either method may be pursued—that is, the summary remedy, or an indictment at common law, because the particular remedy is cumulative and does not take away the former remedy. Therefore an indictment lies for disobedience to an order of Session, that being an indictable offense at common law.

If the Act of Assembly vested any new interest or right in Alston and excluded every other remedy but that of distress; or rather, if the rent depended upon and was created by the Act of Assembly, then the remedy prescribed by the Act would be the only proper remedy. But the antecedent right to the rent existed independent of the Act; and the Act prescribed a mode of recovery in a particular case only, leaving the landlord his common law remedy against the purchaser who obtained the specific property subject to his rent. It might as well be said that a landlord in common cases can maintain no action for rent against the tenant, because his goods and chattels are liable to distress. The rent is paramount [to] the Acts of Assembly, and all the remedies therein prescribed are merely cumulative.

The legislature designed to secure the rent for one year. By the Act, 2 Del.Laws 1147, a year's rent due at the time goods and chattels being on any demised premises are taken in execution is first to be paid out of the sales. And so by the late Act, 4 Del.Laws 263, a year's rent payable in money, although not due, is required to be paid by the sheriff. And the same Act, to secure the rent payable in grain etc. though not due, says that the grain etc. shall be sold by the sheriff subject to the landlord's rent, and with an intention to make it more sure, declares that "when the rent shall become due, the land-lord may [ . . . ] distrain." Now according to the words and in-

---

[1] At this point, *Ridgely's Notebook II, 129*, the account of this case is interrupted; it is resumed at *157*.

tention of this Act, the legislature secured to the landlord the rent against the purchaser, and consequently, according to the case of *Ewer v. Jones,* 2 Salk. 415 and 416, Mod. 26 cited by the plaintiff's counsel from 2 Ld.Raym. 934, 937, as the Act gives a right to the landlord against the purchaser, without giving him a new original right to the rent, the party shall have an action at law to recover it.

In 1 Bl.R. 427, *Brown v. Chapman,* it was determined that an action on the case lies for suing out a malicious commission of bankruptcy, notwithstanding a specific remedy is given by the bankrupt laws, because, as Lord Mansfield said, there is no clause to take away the jurisdiction of the common law.

In the great case of *Millar v. Taylor,* 4 Burr. 2303, where the copyright of authors was laboriously investigated, the two judges, Willes and Aston, both contended that the common-law right of authors and the common-law remedy existed independent of the Statute, 8 Anne c. 19, notwithstanding certain specific remedies were then given for a violation of their rights. They said that the common-law right of authors was antecedent to the Statute, and as the Statute vested no new right in them, they were not confined to the remedy prescribed by the Statute. And Mr. Justice Yates considered that by the Statute a sole right was positively vested in the author during the particular terms which the Statute has limited; and therefore to the author it is the same as a lease or grant, or any other common-law right, while the term exists, and will equally entitle him to all common-law remedies for the enjoyment of that right; and that he may bring an action to recover satisfaction for the injury done to him according to law. And in support of his opinion he cited *Ewer v. Jones,* before mentioned, where Lord Chief Justice Holt lays it down that "wherever a statute gives a right, the party shall, by consequence, have an action at law to recover it." So here whether the right to this rent existed previous to the Act of Assembly, according to the opinions of Willes and Aston, the common-law remedy existed independent of the Act; or whether a right was vested by the Act of Assembly in the landlord to have the rent of the purchaser, he was equally entitled to the common-law remedy, according to the opinion of Mr. Justice Yates; and therefore, in either way he is entitled to his action against the purchaser.

The intention of the legislature seems to me to be very plain that the landlord should not be confined to the remedy by distress alone. The sheriff shall "sell the said grain etc., subject to the land-lord's rent, for one year: and when the rent shall become due, the land-lord may proceed to take, seize, distrain and sell,

for such rent, the said grain" etc. If the legislature had intended that the distress should be the only remedy they would have used language more imperative. The Act was made for the benefit of the landlord; and to confine him to the remedy by distress would often deprive him of all remedy. Suppose the grain removed, the common law must afford the remedy. And so if the goods on the premises are negligently destroyed.

Upon the whole, I think that the action will lie, and that the judgment should be reversed.

BOOTH, Chief Justice, WARNER and COOPER, Justices of the Court of Common Pleas, and PAYNTER, Justice of the Supreme Court, who was not a judge when the judgment was rendered in the Supreme Court, concurring.

Judgment reversed.